## IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF NEW MEXICO

**MATTHEW LEE PATRICK**,

    Plaintiff,

vs.                                                                              Civ. No. 13-0144 LH/RHS

**ALBUQUERQUE SCHOOL DISTRICT;**
**STATE OF NEW MEXICO,**

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING IFP AND DISMISSING COMPLAINT

**THIS MATTER** comes before the Court on pro se Plaintiff Matthew Lee Patrick's *Application to Proceed in District Court without Prepaying Fees or Costs* (hereinafter called "motion to proceed IFP"), filed February 11, 2013, *see* Docs. 2, 5, and on the Court's concomitant obligation "to review the affidavit and screen [his] case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005).

Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(A), (B). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. A party wishing to proceed IFP must demonstrate that he "cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself . . . with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Even if an applicant is indigent, the Court should deny IFP and must "dismiss the case" if it determines that any of the conditions in § 1915(e)(2)(B) exist. *See* § 1915(e)(2); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n.5 (10th Cir. 2006) (noting that dismissals under § 1915(e)(2)(A) & (B) are mandatory).

**I.     Matthew Patrick has not demonstrated indigency.**

Matthew is a 19-year-old unmarried individual with no dependents who has apparently been diagnosed in the past with Asperger's syndrome, some language or communication disabilities, and tics. He lives with his father, Randall, who is retired. Matthew included his father's income and expenses in Matthew's application to proceed IFP, which only his father signed. *See* Doc. 2 at 1. Matthew receives $730/month from Social Security disability and retirement income; his father receives $678/month in Social Security retirement income. Doc. 2 at 2. His father has $5328 in his checking account and owns, free and clear, a 2011 car. *See id.* Matthew and his father expect to receive some inheritance from Matthew's grandfather's estate after the "homestead" is sold and creditors are paid. *Id.* at 5. Matthew and his father pay $685/month for rent and utilities; $150/month for food (although they do not indicate whether they receive food stamps); $130/month for various types of insurance; and $25/month for clothing. *Id.* at 4. Medicaid pays for Matthew's medical expenses. *See id.* They spend $350/month for transportation and gasoline, including trips to Texas and Connecticut to visit family, and $25/month for recreation. *See id.* On these facts, Matthew has not shown that he cannot pay for both his filing fees and the necessities of life. As discussed below, however, even if Matthew were impoverished, the Court would deny permission to proceed IFP and would dismiss his filing.

**II.    Matthew's father cannot represent him.**

Randall Patrick filed a 49-page document called *Plaintiff's Objection to Due Process Dismissal & In Stating a Cause of Action* on Matthew's behalf (who is the only named "petitioner") on February 11, 2013, allegedly acting "under power of attorney." Doc. 1 at 49. The next day, he filed an almost identical 50-page "corrected version" of the document, attaching 380 pages of motions, briefs, rulings, and other documents related to Randall's representation of Matthew in their conflict with Defendant Albuquerque Public Schools over whether Matthew is entitled to continue to receive transitional public-school special education under the Individuals with Disabilities Act ("IDEA") in Albuquerque after his prior school in Texas determined that Matthew should graduate and issued to him a transcript of graduation. *See* Doc. 6-5 at 2; Doc. 6-7 at 24 (transcript showing graduation from Texas high school on 6/1/2012). The Court will supplant Document 1 with Document 6.

Document 6 is almost as unintelligible as its title. It is a disorganized jumble of facts and extensive legal argument made further incomprehensible by incomplete sentences and a stream-of-consciousness writing style. It falls far short of complying with Federal Rule of Civil Procedure Rules 3 and 8, which require "a civil action [to be] commenced by filing a complaint" and describe how a plaintiff must file a "short and plain statement of the grounds for the court's jurisdiction . . . the claims showing that the pleader is entitled to relief . . . and a demand for the relief sought." The Court has had to principally rely on documents attached to Document 6 to determine what apparently happened in this case.

Matthew signed Document 6. *See* Doc. 6 at 50. But Randall has described Matthew as not being "able to go out on his own or in the real world;" "unable to handle his personal or financial affairs," "suspectible [sic] to not reaching adult-outcomes;" "not able to understand others and others

3

not able to understand him, when it comes to real life or complex situations;" and without "skills . . . [to make] decisions on his own; and advocating for himself and understanding his disability." Doc. 6-4 at 22. It is clear, therefore, that Randall, and not Matthew, prepared and filed the document and that Randall is attempting to represent Matthew in federal court, as he represented him in filing his administrative due-process complaint. *See* Doc. 6-5 at 1. This is not permitted, however.

The United States Supreme Court has succinctly summarized the rights of parents and children under the IDEA, as well as the procedures that must be followed before an injured party may turn to the courts for relief.

> When a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse: It requires that a State provide "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." § 1415(b)(6). By presenting a complaint a party is able to pursue a process of review that, as relevant, begins with a preliminary meeting "where the parents of the child discuss their complaint" and the local educational agency "is provided the opportunity to [reach a resolution]." § 1415(f)(1)(B)(i)(IV). If the agency "has not resolved the complaint to the satisfaction of the parents within 30 days," § 1415(f)(1)(B)(ii), the parents may request an "impartial due process hearing," § 1415(f)(1)(A), which must be conducted either by the local educational agency or by the state educational agency, *ibid.*, and where a hearing officer will resolve issues raised in the complaint, § 1415(f)(3).
>
> IDEA sets standards the States must follow in conducting these hearings. Among other things, it indicates that the hearing officer's decision "shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education," and that, "[i]n matters alleging a procedural violation," the officer may find a child "did not receive a free appropriate public education" only if the violation
>
>> "(I) impeded the child's right to a free appropriate public education;
>>
>> "(II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or

>> "(III) caused a deprivation of educational benefits." §§ 1415(f)(3)(E)(i)-(ii).
>
> If the local educational agency, rather than the state educational agency, conducts this hearing, then "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." § 1415(g)(1). Once the state educational agency has reached its decision, an aggrieved party may commence suit in federal court: "Any party aggrieved by the findings and decision made [by the hearing officer] shall have the right to bring a civil action with respect to the complaint." § 1415(i)(2)(A); see also § 1415(i)(1).
>
> IDEA, finally, provides for at least two means of cost recovery that inform our analysis. First, in certain circumstances it allows a court or hearing officer to require a state agency "to reimburse the parents [of a child with a disability] for the cost of [private–school] enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child." § 1412(a)(10)(C)(ii). Second, it sets forth rules governing when and to what extent a court may award attorney's fees. See § 1415(i)(3)(B). Included in this section is a provision allowing an award "to a prevailing party who is the parent of a child with a disability." § 1415(i)(3)(B)(i)(I).

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007). "[P]arents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court." *Id.* at 5. Further, the IDEA "contemplates parents will be the parties bringing the administrative complaints." *Id.* "Parents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf." *Id.* at 535. Critically, however, under 20 U.S.C. § 1415(m)(1), when a student such as Matthew reaches the age of majority under state law[1], "all other rights accorded to parents under this subchapter transfer to the child" unless the child has been deemed incompetent by a court or "is determined not to have the ability to provide informed consent with respect to the educational

---

[1] A child reaches majority at age 18 in New Mexico. *See* N.M.S.A. 1978 §§ 12-2A-3(B) and 28-6-1.

program of the child," which do not appear to apply here[2]. Randall turned 18 on July 18, 2011, before he even moved to Albuquerque. *See* Doc. 6-7 at 24 (6/1/12 Texas graduation transcript showing Matthew's birthdate as 7/18/1993). Thus, Randall has no independent rights under the IDEA against APS that he can prosecute on his own behalf.

And Randall cannot speak for, or represent, Matthew. The Tenth Circuit Court of Appeals has long ruled that persons acting pro se may only represent themselves, even when they desire to represent a minor child. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."). Because Randall is not an attorney, he can not bring Matthew's claims to court, even if Matthew allegedly gives him a "power of attorney." There are several attorneys in the Albuquerque area experienced in prosecuting IDEA appeals who would most likely be willing to represent Matthew if he has a strong case against APS.

**IT IS ORDERED** that Matthew Patrick's motion to proceed IFP [Doc. 2] is DENIED and this cause of action is DISMISSED without prejudice under § 1915(e)(2)(A).

                                                */s/ LeRoy Hansen*
                                      **SENIOR UNITED STATES DISTRICT JUDGE**

---

[2] According to a document Randall attached to Document 6, APS gave notice to Matthew and to Randall that, when Matthew turned 18, "all of the rights described in the Parent and Child Rights in Special Education: Procedural Safeguards Notice document will transfer to [Matthew]." Doc. 6-8 at 6.